IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICK BAKATURSKI, #R62877, <br><br>                 Plaintiff, <br><br>v. <br><br>WEXFORD HEALTH CARE, <br>ASHLEY O'NEAL, <br>DARREN GALLOWAY, <br>MAJOR HILLE, <br>COUNSELOR HOUSE, <br>COUNSELOR LOVE, <br>THE DIRECTOR OF THE OFFICE OF HEALTH, and <br>LATOYA HUGHES,[1] <br><br>                 Defendants. | Case No. 23-cv-03609-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

      Plaintiff Patrick Bakaturski, an inmate of the Illinois Department of Corrections (IDOC), filed this lawsuit pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred at Shawnee Correctional Center. The Complaint is now before the Court for review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from

---

[1] Not all Defendants have been correctly listed on the docket. The Clerk of Court is **DIRECTED** to **ADD** Wexford Health Care, Counselor Love, the Director of the Office of Health, and Latoya Hughes as defendants. (Doc. 1, p. 1, 8). Furthermore, in the Complaint, Defendant #1 is listed as "Director of Wexford Health Care, Ashley O'Neal R.N. Director of Nursing." (Doc. 1, p. 7). Plaintiff states that Ashley O'Neal is the director of nursing and Wexford's acting medical director. (*Id.* at p. 26). Thus, Ashely O'Neal and the Director of Wexford Health Care are the same person, and the Clerk is **DIRECTED** to terminate "Director, *Wexford Health Care*" as a defendant. The Clerk is further **DIRECTED** to modify the name "Ashley Oneil" to "Ashley O'Neal" and "Counselor Houseman" to "Counselor House." (*Id.* at p. 7).

such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff states that on July 11, 2022, he was transferred to Shawnee Correctional Center (Shawnee) from Lawrence Correctional Center. (Doc. 1, p. 14). Since his arrival at Shawnee, he has not been afforded constitutionally adequate time out of his cell and subjected to unlawful lockdowns and movement restrictions. He states that Shawnee is officially classified as a medium security facility, but after his transfer, he was told that Shawnee is a medium/maximum security prison "on 22.5 hours lock down" and is "an experimental disciplinary prison." (*Id.*). Under Illinois law, a medium security prison is required to allow at least six hours of out of cell time a day. (*Id.* at p. 18). Plaintiff asserts that he is classified as a medium security risk, and therefore, he is entitled to six hours a day of movement. (*Id.* at p. 14, 18).

Plaintiff's out of cell time has also been restricted due to COVID-19 policy. (Doc. 1, p. 23). From July 11, 2022, when he arrived at Shawnee, through July 1, 2023, Plaintiff was allowed less than a total of twelve hours of fresh air recreation time. (*Id.* at p. 15, 23). Additionally, he is only allowed out of his cell seventeen hours per week. (*Id.* at p. 18).

Plaintiff has a history of mental illness. In 2015, he was designated as seriously mentally ill (SMI) and documented as being "Bi-Polar depressive." (Doc. 1 p. 4; Doc. 1-1, p. 4). When he was housed at Lawrence Correctional Center his SMI status was revoked, and due to an error in record keeping, his mental health file has been lost. According to mental health staff at Shawnee, no mental health care file exists for Plaintiff. (Doc. 1, p. 4). He asserts that the repeated lockdowns and lack of movement is impacting his physical and mental health. (*Id.* at p. 4, 23). And because he is not recorded has suffering from mental illness, Plaintiff claims that he is being denied access

to mental health programs, yard time, and treatment. (*Id.* at p. 2).

Plaintiff asserts that the hours he is outside of his cell are being falsely reported. (Doc. 1, p. 18). He states that in May 2023 he was given a job at Shawnee, and his working hours are from 4:00 p.m. to 11:00 p.m. Tuesday through Saturday. However, he has never been allowed out of his cell to work.

Twice in 2022, Plaintiff was placed on medical quarantine without justification and without medical oversight. (Doc. 1, p. 27). In August 2022, Shawnee staff claimed that Plaintiff had come into contact with an inmate who had contracted COVID-19. (*Id.* at p. 19). He was quarantined for two weeks and released on September 5, 2022. Plaintiff was placed on medical quarantine again with no medical justification from November 12, 2022, through December 20, 2022. While on quarantine, he was unlawfully restricted to his cell. (*Id.* at p. 27).

### PRELIMINARY DISMISSALS

The Court dismisses claims against Wexford Health Care for suppressing a second set of medical records from Plaintiff "in violation of state and federal law." (Doc. 1, p. 28). Refusal to produce medical records does not violate a constitutionally established right, and Plaintiff does not specify a federal or state law under which he is pursuing civil liability against Wexford. *See Allen v. Asselmeier*, No. 15-cv-334-NJR-DGW, 2016 WL 5341189, at *5 (S.D. Ill. Sept. 23, 2016) (noting that the Court is not aware of any constitutional right to view medical records); *Kimmel v. Jackson Cty.*, Il. No. 11-cv-01146-MJR, 2012 WL 3262903, at *6 (S.D. Ill. Aug. 9, 2012) (finding that a claim based on the prison's denial to release medical records did not implicate any constitutional right held by the plaintiff). Accordingly, the claims against Wexford Health Care for denying Plaintiff access to medical records are dismissed.

The Court also dismisses Plaintiff's claims that pertain to the violation, enforcement, and expansion of the settlement agreement in *Rasho v. Baldwin.* (Doc. 1, p. 2). He claims that pursuant

to the settlement agreement in *Rasho,* the Illinois Department of Corrections was required to give mentally ill offenders, who had been in a controlled setting for longer than sixty days, twenty hours of out of cell time per week. (*Id.* at p. 3). Plaintiff seeks a preliminary and permanent injunction ordering that the *Rasho* settlement be extended to all inmates, not just those with who are mentally ill. (*Id.*). He seeks equal access to mental health treatment and yard time for all inmates in general population. (*Id.* at p. 45).

As Plaintiff states, *Rasho* is a class action lawsuit that was filed in the United States District Court for the Central District of Illinois by a group of mentally ill offenders who were denied adequate mental health treatment and subjected to extended periods of segregation that exacerbated their mental health problems. *See Rasho v. Walker*, Case No. 07-cv-1298-MMM (C.D. Ill). On May 23, 2016, the *Rasho* court adopted a settlement agreement, (Doc. 696 and 710 in *Rasho*), which contains provisions to ensure that seriously mentally ill prisoners receive mental health treatment while confined in segregation and that mental health staff evaluate such prisoners and may make recommendations that their segregation terms be shortened. The only relief sought in *Rasho* was injunctive relief. The court in *Rasho* has noted that an inmate who wishes to seek damages arising from deliberate indifference to a mental health condition must do so in an individual action. (Text Orders, dated 5/18/2016, 9/16/2016, 9/26/2016, *Rasho*). But, claims pertaining to enforcement of the settlement agreement should be brought in the Central District of Illinois, where that case was litigated. *See Rasho v. Walker*, 2018 WL 2392847, C.D. Ill. (stating that the "Settlement Agreement allows for the Plaintiffs to seek relief from this Court if there is a dispute as to whether or not the Defendants are in substantial compliance.").

In the instant, this case, Plaintiff may pursue claims stemming from deliberate indifference to his mental health and the implementation of excessive lockdowns. Plaintiff may not, however, pursue claims pertaining to enforcement or modification of the *Rasho* settlement agreement. Those

claims must be brought, if at all, in the Central District of Illinois. Accordingly, Plaintiff's claims pertaining to violation, enforcement, and expansion of the *Rasho* settlement agreement are dismissed without prejudice, and Plaintiff's request for a preliminary injunction pertaining to the same is denied.

The Court dismisses Plaintiff's claims to the extent he is alleging that housing him, an inmate classified as a medium security risk, in a medium/maximum security hybrid facility under maximum security guidelines amounted to a constitutional violation. (Doc. 1, p. 18). The Constitution does not guarantee placement in a particular prison, *Meachum v. Fano,* 427 U.S. 215, 224 (1976), and "prisoners possess neither liberty nor property in their classifications and prison assignments." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992). As discussed below, this does not mean that the lockdown restrictions imposed on Plaintiff were constitutional. Rather, the act of placing an inmate who is classified as a medium security risk in a maximum-security facility does not in and of itself amount to cruel and unusual punishment under the Eighth Amendment or violate the due process clause of the Fourteenth Amendment, and such claims are dismissed. *See Mathews v. Fairman,* 779 F. 2d 409, 412 (7th Cir. 1985) ("it is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence").

Plaintiffs claim against IDOC staff for falsely recording the number of hours he is working is also dismissed. (*See* Doc. 1, p. 25). This claim is not associated against any of the named Defendants, and merely asserting that groups of staff members violated his constitutional rights does not meet the pleading standards of Federal Rule of Civil Procedure 8. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement).

Likewise, to the extent Plaintiff is attempting to state a constitutional claim for the failure to provide him access to mental health programing because his SMI status was revoked and his mental health records were lost, such claim is dismissed. It is not clear against whom these allegations are asserted.

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Eighth Amendment conditions of confinement claim against Galloway, Hughes, and the Director of the Office of Health for implementing policies that resulted in repeated and excessive lockdowns and limited yard and out of cell time.

**Count 2:** Eighth Amendment conditions of confinement claim against O'Neal, Wexford Health Care, the Director of the Office of Health, Hille, and Galloway for placing Plaintiff on medical quarantine without justification, investigation, or medical oversight in the fall of 2022.

**Count 3:** First Amendment claim against O'Neal, Wexford Health Care, Galloway, House, Love, and Hille for placing Plaintiff on medical quarantine in retaliation for filing grievances and a civil suit.

**Count 4:** Claims under First, Fourteenth, and Eighth Amendments against House, Love, and the Director of the Office of Health for the mishandling of Plaintiff's grievances.

**Count 5:** Americans with Disabilities Act/Rehabilitation Act [2] claim for failing to accommodate Plaintiff's mental disability.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice**

---

[2] Plaintiff does not mention the Rehabilitation Act, 29 U.S.C. § 794(a), in his Complaint, but the Seventh Circuit has cautioned that claims of discrimination on account of a disability, especially those from a pro se prisoner litigants, should be analyzed by the district court in light of both the ADA and RA, whether or not the plaintiff has assert a claim under the latter statute. *Norfleet v. Walker,* 684 F.3d 688, 690 (7th Cir. 2012).

as inadequately pled under the *Twombly*[3] pleading standard.

### Unconstitutional Conditions of Confinement: Counts 1 and 2

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). An Eighth Amendment claim has both objective and subjective elements. *See Johnson v. Prentice,* 29 F. 4th 895, 904 (7th Cir. 2022). The objective element asks whether the alleged deprivation is "sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (internal citations and quotations omitted). As to the subjective element, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer,* 511 U.S. at 834; *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer,* 511 U.S. at 837.

### Count 1

Plaintiff's claims against Director Hughes, Warden Galloway, and the Director of the Office of Health sufficiently state an Eighth Amendment claim. Plaintiff asserts that because of frequent lockdowns and restrictions on yard, exercise, and out of cell time, he has been afforded very limited opportunities outside of his cell. *See Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013). He also is unable to participate in his work assignment and attend mental health programing. As a result, he has suffered both mentally and physically. Count 1 will proceed against Hughes, Galloway, and the Director of the Office of Health in their official capacities for injunctive relief.

---

[3] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

To the extent Plaintiff is seeking monetary damages, Count 1 is dismissed against these Defendants. Plaintiff states that he is suing Defendants in their official capacities only. (Doc. 1, p. 14, 31, 45). State officials named in their official capacities may not be sued for monetary damages in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). Therefore, the claims for money damages against these individuals is dismissed.

**Count 2**

Plaintiff claims that the Director of the Office of Health unlawfully placed him in medical confinement on COVID quarantine and cell restriction. (Doc. 1, p. 19, 42). He also asserts that Nurse Ashley O'Neal, who he believes is the director of nursing and the acting medical director at Shawnee, Major Hille, and Wexford Health Care ordered that he be placed on quarantine in restrictive housing with limited out of cell movement and no recreation time from November 17, 2022, through December 20, 2022, "in the name of COVID-19." (*Id.* at p. 15, 26). During his time in quarantine, Plaintiff was limited to only 30 minutes per day out of his cell. Plaintiff asserts that he was quarantined for no lawful reason. (*Id.* at p. 16).

Plaintiff takes issue with the fact that there are discrepancies in his records regarding why he was placed in a more restrictive environment and whether he was in fact placed in medical quarantine from August 21, 2022, through September 5, 2022, and November 17, 2022, through December 20, 2022. To support his claim that his time spent in quarantine was unlawful because it lacked justification, he points to grievances responses received that conflict with affidavits submitted by staff members in another case he is currently litigating, *Bakaturski v. Jeffreys,* No. 21-cv-00014-GCS (S.D. Ill. 2021), discussing why Plaintiff was placed in restrictive housing in

the fall of 2022.[4]

Even assuming that there was not a medical justification for placing Plaintiff in medical quarantine, he has still failed to state a claim for cruel and unusual punishment. (Doc. 1-2, p. 5, 61). Inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions. *See e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008) (no liberty interest for 60 days in segregation); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005) (no liberty interest for 90 days in segregation). And Plaintiff's allegations that the conditions he experienced while quarantined for a short period of time – denied yard time and only allowed out of his cell for thirty minutes each day – are not sufficiently serious to rise to the level of an Eighth Amendment violation. *See Isby v. Brown,* 856 F. 3d 508, 522-53 (7th Cir. 2017) (finding conditions in administrative long-term segregation where the plaintiff remained in his cell for twenty-three hours each day along with other uncomfortable conditions concerning lighting, food, temperatures, and sleeping arrangements for over ten years did not amount to an "egregious deprivation").

Furthermore, there is nothing in the Complaint from which the Court can infer that O'Neal, the Director of the Health Office, Hille, Galloway, or Wexford Health Care knew that Plaintiff's health or safety was at risk by placing him in a more restrictive environment for fifteen days and then for thirty-three days. Plaintiff states that he "does not know which officer or staff has ordered his placement on cell restriction," and he cannot hold Defendants liable solely because they are in supervisory positions or for the conduct of their employees. (Doc. 1, p. 25). *See Howell v. Wexford*

---

[4] An affidavit submitted by Ashely O'Neal states that Plaintiff "was not placed in medical quarantine from November 17, 2022 to December 20, 2022." (Doc. 113-2, *Bakaturski v. Jeffreys*). The declaration from IDOC Staff Member Quinton Smothers states that Plaintiff was placed in "receiving due to there being no room in general population. The receiving wing does have restrictive movement due to the nature of the wing's use for receiving transfers from other facilities." (Doc. 1-2, p. 5). In response to his grievance about being under COVID-19 quarantine, the counselor wrote, "Individual in custody is currently housed in receiving which is under quarantine." (*Id.* at p. 64).

*Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021).

### Count 3

Plaintiff states that he was placed on quarantine in retaliation for filing a civil suit and grievances. (Doc. 1, p.17, 22). He concludes that the placement was retaliatory because 1) on November 17, 2022, the attorney for Wexford Health Care requested medical records in his other civil case, *Bakaturski v. Jeffreys*, and that same evening he was moved to restrictive housing by medical; 2) he has been told different reasons for why he was moved to restrictive housing and quarantined; and 3) in *Bakaturski v. Jeffreys*, Defendants produced copies of emails that include confidentiality disclaimers, which leads him to believe they are trying to suppress information. (Doc. 1, p. 17, 31, 33-34)

Plaintiff's conclusion of retaliation based on these assertions is purely speculative, and he has failed to plead any facts that allow a reasonable inference that his placement in restrictive housing under quarantine was motivated by his grievances and the filing of his other lawsuit. Thus, Plaintiff has failed to state a claim of retaliation against O'Neal, Galloway, Hille, House, Love, and Wexford Health Care. Count 3 is dismissed.

### Count 4

Plaintiff asserts that Counselors House and Love violated his rights under the First, Fourteenth,[5] and Eighth Amendments by providing false information in their responses to his grievances, refusing to investigate his constitutional claims asserted in the grievances, and refusing to forward his grievances to mental health or ADA staff. He also claims that the Director of the Office of Health ordered that staff should deny and not investigate all grievances relating to

---

[5] Plaintiff also claims that Defendants violated his rights under the Fifth Amendment. (Doc. 1, p. 19, 39). The Fifth Amendment, however, supplies the guarantee of due process to a federal inmate, and so, the Court will analyze Plaintiff's due process claims only under the Fourteenth Amendment. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

COVID-19 protocols violating his rights under the First and Fourteenth Amendment. (Doc. 1, p. 44).

Count 4 is dismissed. Plaintiff cannot hold individuals liable simply because they mishandled or somehow impeded the grievance process. The mishandling of grievances, standing alone, does not state a constitutional claim. (Doc. 25, p. 9). "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Contrary to Plaintiff's assertions, failing to further investigate his complaints and ruling against his "administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Furthermore, Plaintiff's claim that House and Love responded to Plaintiff's grievances with false information that he had been placed in restrictive housing on a medical quarantine does not constitute an "extreme deprivation" sufficient to violate the Eighth Amendment. Accordingly, Count 4 is dismissed.

**Count 5**

Under the Americans with Disabilities Act ("ADA"), "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The Rehabilitation Act ("RA") likewise prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. The analysis under the ADA and the RA is the same, except that the RA includes as an additional requirement the receipt of federal funds, which all states accept for their prisons. *Jaros v. Ill. Dep't of Corr.*, 685

F.3d 667, 671 (7th Cir. 2012)(citing 29 U.S.C. § 705(2)(B)). Discrimination under both includes the failure to accommodate a disability. *Jaros,* 684 F.3d at 672 (citation omitted).

Plaintiff states that he has been diagnosed as being "Bi-Polar depressive" and designated as SMI. Because of the COVID-19 medical quarantines, ongoing lockdowns, and practice of keeping inmates in their cells for over twenty-two hours a day, he is confined to his cell and not being provided accommodation for his mental disability, including access to mental health programing, medication, and additional yard time. (Doc. 1, p. 27). These allegations are sufficient to articulate a colorable ADA and RA claim. Because the proper defendant in a claim under the ADA and RA is the state agency, *see* 29 U.S.C. § 749(b); 42 U.S.C. § 12131(1)(b), Count 5 will proceed against Director Hughes in her official capacity. *See Jaros*, 684 F. 3d at 670, n. 2.

### MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

The motion for leave to proceed *in forma pauperis* (IFP) is **DENIED as moot.** (Doc. 2). On March 18, 2024, Plaintiff paid the filing fee in full.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion seeking court recruited counsel (Doc. 3), which is **DENIED.**[6] Plaintiff has not demonstrated that he has made a reasonable effort to obtain counsel on his own. He states he has only contacted one law firm seeking representations, which is insufficient. With respect to his ability to pursue this action pro se, Plaintiff states that his claims are complex and possibly present issues appropriate for a class action lawsuit. Nonetheless, the Court finds that Plaintiff is capable of proceeding pro se, at least for now. Plaintiff's pleadings demonstrate not only an ability to construct coherent sentences and relay information to the Court, but he also supports his arguments with legal citations and exhibits. Plaintiff also indicates that he has some

---

[6] In evaluating Plaintiff's motion, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

college education. At this early stage in the proceedings, the recruitment of counsel is not warranted at this time, and the motion is denied. Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to: (1) contact at least three attorneys regarding representation in this case prior to filing another motion; (2) include in the motion the names and address of at least three attorneys he has contacted; and (3) if available, attach the letters from the attorneys who declined representation.

### MOTION FOR STATUS

In light of this Order, the motion for status is **DENIED as moot.** (Doc. 8).

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. The Clerk is **DIRECTED** to modify defendants' names on the docket in accordance with footnote 1.

**COUNT 1** will proceed against Galloway, Hughes, and the Director of the Office of Health. **COUNT 5** will proceed against Hughes. **COUNTS 1, 3,** and **4** are **DISMISSED**. Because there are no surviving claims against O'Neal, Hille, House, Love, and Wexford Health Care, the Clerk of Court is **DIRECTED** to terminate them as defendants.

Because Plaintiff's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Galloway, Hughes, and the Director of the Office of Health the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6)

to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   May 7, 2024**

                                               *s/Stephen P. McGlynn*
                                               **STEPHEN P. MCGLYNN**
                                               **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.