**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **PATRICK BAKATURSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-03609-GCS** |
| | ) | |
| **DARREN GALLOWAY,** | ) | |
| **LATOYA HUGHES,** | ) | |
| **AMANDA SMITH,** | ) | |
| **and** | ) | |
| **MELVIN HINTON,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Pending before the Court is Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies. (Doc. 84, 87).[1] Defendants argue Plaintiff failed to exhaust his administrative remedies because he failed to exhaust any grievances related to the allegations contained in the amended complaint against them. Plaintiff filed an opposition to the motion. (Doc. 86). The Court held an evidentiary hearing on the motion. Plaintiff, John Houseman, and Margaret Madole testified, and the Court took the

[1] Defendants filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the failure to respond to the motion for summary judgment. *See* (Doc. 85).

matter under advisement. (Doc. 90). For the reasons set forth below, the Court **GRANTS in part and DENIES in part** the motion.

On November 7, 2023, Plaintiff Patrick Bakaturski, an inmate of the Illinois Department of Corrections ("IDOC"), filed his complaint pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Shawnee Correctional Center ("Shawnee"). (Doc. 1). The original complaint alleged systemic lockdowns, denial of mental health care, and the failure to accommodate a known mental illness. *Id*. Plaintiff sought both injunctive relief and monetary damages. *Id.*

The Court conducted an analysis of the complaint under 28 U.S.C. § 1915A and issued a screening order on May 7, 2024. (Doc. 10). Plaintiff was allowed to proceed on two counts:

> **Count 1** – Eighth Amendment conditions of confinement claim against Galloway, Hughes, and the Director of the Office of Health for implementing policies that resulted in repeated and excessive lockdowns and limited yard and out of cell time.
>
> **Count 5** - Americans with Disabilities Act/Rehabilitation Act[2] claim against Hughes for failing to accommodate Plaintiff's mental disability.

(Doc. 10, p. 13).

On September 3, 2024, Plaintiff moved for leave to file an amended complaint.

---

2 Plaintiff did not mention the Rehabilitation Act, 29 U.S.C. § 794(a), in his complaint, but the Seventh Circuit has cautioned that claims of discrimination on account of a disability, especially those from *pro se* prisoner litigants, should be analyzed by the district court in light of both the ADA and RA, whether or not the plaintiff has asserted a claim under the latter statute. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012).

(Doc. 43). On May 22, 2025, the Court granted in part and denied in part the motion, allowing Plaintiff's amended claims: Count 1, Eighth Amended Conditions of Confinement claim against Defendant Galloway, Defendant Smith, Director of Mental Health at Shawnee in her official capacity, and Defendant Hinton, Director of Mental Health at IDOC, in his official capacity for injunctive relief, alleging that Plaintiff was denied meaningful yard access and out-of-cell time for extended periods despite no misconduct on his part; Count 3, First Amendment Retaliation claim against Defendant Galloway alleging that Defendant Galloway ordered the closure of yard access in response to Plaintiff filing this lawsuit; and Count 5, ADA/RA claim against Defendant Hughes in her official capacity, alleging that Plaintiff was improperly removed from the mental health case load, denied out-of-cell time, and access to treatment based on his mental illness, constituting discrimination. (Doc. 63). Further, the Court specifically ordered: "Defendants are ORDERED to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g)." *Id*. at p. 19.[3]

## FACTS

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

---

[3] 42 U.S.C. § 1997e(g) pertains to the issue of exhaustion of administrative remedies.

The parties agree that following are the relevant grievances to the allegations in Plaintiff's amended complaint. The record reveals that five of these grievances were appealed to the ARB, and that out of these five, 4 grievances were fully exhausted, and one was returned for not following Department Rule 504.

***Grievance #2022-8-62***

On August 7, 2022, Plaintiff filed grievance #2022-8-62. As to the nature of this grievance, Plaintiff checked medical treatment and the "other" box and specified no gym or yard and quarantine. Plaintiff requested that he to go to the yard and gym and that the Covid medical quarantine be lifted. On August 10, 2024, the grievance counselor responded: "[p]er the yard schedule all yard times are subject to change and cancellation at any time." The Administrative Review Board ("ARB") received this grievance on September 22, 2022, and on November 2, 2022, the ARB denied it finding the facility appropriately addressed the issue. (Doc. 84-1, p. 13-16). Plaintiff does not name any of the individual Defendants in this grievance.

***Grievance #2022-8-286***

On August 29, 2022, Plaintiff filed grievance #2022-8-286, complaining about his yard and gym being canceled due to Covid and about his cell conditions. He requested to be tested for Covid 19 every time he is "locked down," to receive cleaning supplies, and to receive his one hour out of the cell. On August 31, 2022, the grievance counselor responded: "IDOC follows the guidelines of OHS and IDPH. Shawnee has a cleaning

schedule in place, as well as hot water. Shawnee has been checked for and does not have black mold problem." The grievance officer responded to the grievance on February 15, 2023, recommending that the grievance be denied, and the CAO concurred on February 17, 2023. Plaintiff appealed to the ARB on February 26, 2023. The ARB received the grievance on March 1, 2023, and denied it on May 1, 2023, finding the facility appropriately addressed the issue. (Doc. 84-1, p. 6-12). Plaintiff does not name any of the of individual Defendants in this grievance.

***Grievance #2022-11-22***

Thereafter, on November 28, 2022, Plaintiff submitted grievance #2022-11-22. As to the nature of the grievance, Plaintiff checked the "other" box and specified Covid lockdown and phone access. The grievance counselor responded to the grievance on December 5, 2022, stating: "[p]er Covid Protocol 'All individuals on medical quarantine wing are allowed 1 30 minute dayroom period to access the phone. Individual in custody is currently housed in receiving which is under medical quarantine . . .'" The grievance officer, on March 1, 2023, recommended that the grievance was moot, and the CAO concurred on March 3, 2023. Plaintiff appealed to the ARB on March 7, 2023. The ARB received the grievance on March 13, 2023, and denied it on May 31, 2023, finding the facility appropriately addressed the issue. (Doc. 84-1, p. 2-5). Plaintiff does not name any of the individual Defendants in this grievance.

*Grievance #K19-0524-0815*

Plaintiff filed grievance #K19-0524-0815 on April 27, 2024. As to the nature of this grievance, Plaintiff checked the "ADA" box and the "other" box and noted no yard. In toto, the summary of the grievance stated:

> The second shift night yard on 4-26-2024 was cancelled. The first shift yard on 4-27-2024 1 pm, was cancelled. Of the 11 yards approved for April close to 50% of the yards were cancelled. This is a violation of the Mental Health Settlement which say each S.M.I. inmate is supposed to get 10 hour of yard per week and 20 hour out-of-cell time. I am only getting less the 17 hours. Shawnee reports to be a 18 and 6, but it is a 22.5 and 2.5.

Plaintiff requested equal access to yard. On May 6, 2025, the grievance counselor responded: "[p]er monthly yard schedule approved by AWP Walker, 'All times are subject to change or cancellation.'" The grievance officer recommended that this grievance be denied on May 13, 2024, and the CAO concurred on May 17, 2024. Plaintiff appealed to the ARB on May 29, 2024. The ARB received the grievance on June 3, 2024, and denied it on July 10, 2024, finding the facility appropriately addressed the issue. (Doc. 84-2, p. 2-5). Plaintiff does not name any of the individual Defendants in this grievance.

*Grievance #K19-0524-0947*

On May 20, 2024, Plaintiff submitted grievance #K19-0524-0947. As to the nature of this grievance, Plaintiff marked the "ADA" box and the "other" box and noted mental health. In the summary of the grievance, Plaintiff stated:

> I filed a federal Civil Suet [sic] Against Shawnees for no Yard and Mental health programs. Bakaturski v. Director et al 3-23-03609-SPM. . . . Since Coming to Shawnee I have only filed three types of Grievances. NO Yard, No

> Right to Work or take part in Programs and issues over my elbow which is broke. Mental Health is refusing to reply to my request. [sic] and address the fact that more than half of my Mental Health care file was lost. My 1983 cited this issue, which is why I am filing this. The Court said that my 8th Amendment rights maybe being violated due to the endless restrictions. But that I needed to file another motion outlining who from Mental Health has refused me programs. And who is the Director of mental Health.
>
> FORWARD to GRIEVANCE OFFICE.
>
> Grievance office 6-1-2024
>
> I am not requesting educational classes. I am requesting access to mental Health programs. Please contact mental Health.

On May 30, 2024, the grievance counselor responded, and on June 4, 2024, the grievance officer recommended the grievance be denied finding: "Mr. Bakaturski is not on the mental health caseload; therefore, he would not meet the criteria for the current group sessions and the yard gets canceled due to institutional needs." The CAO concurred on June 6, 2024. Plaintiff appealed to the ARB on June 12, 2024. The ARB received the grievance on June 17, 2024, and on June 28, 2024, the ARB returned Plaintiff's grievance for not meeting DR504.810, which requires dates to be provided. Plaintiff did not include the names of the individual Defendants in this grievance. (Doc. 84-2, p. 6-9).

***Grievance #K19-0824-1460***

On August 4, 2024, Plaintiff filed grievance #K19-0824-1460 complaining about staff conduct, out-of-cell time, work and yard restrictions, and ADA issues. He requested that he be allowed out of his cell for 6 hours a day. On August 9, 2024, the grievance counselor responded: "[p]er DR 504 all dayroom and Rec time are subject to change." There is nothing in the record to show that this grievance was sent to the ARB or that it

was fully exhausted. Defendant Galloway is the only Defendant named in this grievance. (Doc. 84-3, p. 1, 2).

***Grievance #K19-1224-2467***

Plaintiff filed grievance #K19-1224-2467 on December 29, 2024, complaining about not being able to work as a porter from December 1, 2024, to December 29, 2024. As to the nature of the grievance, Plaintiff marked "other" and noted "work restriction." On January 3, 2025, the grievance counselor responded: "[p]er AD 420.30: All job assignments are subject to review and approval by the CAO." On January 24, 2025, the grievance officer recommended mixed action on this grievance: "Bakaturski got an assignment change to the Dietary but out of cell time can be canceled or changed at any time do [sic] to operational needs. No individual is guaranteed the same amount of time everyday." The grievance officer noted this was also the response to grievance K19-0125-0015. The CAO concurred on January 24, 2025. (Doc. 84-3, p. 3-5). There is nothing in the record to indicate that this grievance was appealed to the ARB or that it was fully exhausted. Plaintiff does not name any of the individual Defendants in this grievance. This grievance was filed after Plaintiff submitted his amended complaint.

***Grievance #K19-0125-0015***

Plaintiff filed grievance K19-0125-0015 on January 1, 2025, complaining of staff conduct and out-of-cell time. He again requested to be out of his cell 6 hours a day. A week later, the grievance counselor responded: "[a]ll times are subject to cancellation for

gym and yard and at SCC no porter is barred from working nor is being a porter a reason not to be hired as a dietary worker. (Doc. 84-3, p. 6, 7). On January 24, 2025, the grievance officer recommended mixed action on this grievance: "Bakaturski got an assignment change to the Dietary but out of cell time can be canceled or changed at any time do [sic] to operational needs. No individual is guaranteed the same amount of time everyday." The CAO concurred on January 24, 2025. *Id*. at p. 3-5. There is nothing in the record to indicate that this grievance was appealed to the ARB or that it was fully exhausted. Defendant Galloway is the only Defendant named in this grievance. This grievance was filed after the Plaintiff submitted his amended complaint.

Plaintiff filed suit on November 7, 2023. (Doc. 1), and he submitted his amended complaint on September 3, 2024. (Doc. 43).

## LEGAL STANDARDS

Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)); FED. R. CIV. PROC. 56(a). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). The statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g.*, *Williams v. Rajoli,* 44 F.4th 1041, 1045 (7th Cir. 2022) (noting that "[w]e take a strict compliance approach to exhaustion.") (citations omitted). Exhaustion must occur before the suit is filed. *See Chambers v. Sood*, 956 F.3d 979, 981 (7th Cir. 2020); *Williams*, 44 F.4th at 1043. A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*.

Moreover, "[t]o satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *Chambers,* 956 F.3d at 983; *Jackson v. Esser*, 105 F.4th 948, 956 (7th Cir. 2024). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Maddox v. Love,* 655 F.3d 709, 721 (7th Cir. 2011) (citations omitted). The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Hacker v. Dart,* 62 F.4th 1073, 1084 (7th Cir. 2023).

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008); *Jones v. Lamb*, 124 F.4th 463, 469 (7th Cir. 2024). Thus, where failure to exhaust

administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742 (7th Cir. 2008); *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015).

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision

> does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint[,] or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written

report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

A prisoner can amend the complaint to add a new claim or defendant, if he fully exhausts his administrative remedies before seeking leave to amend. *See, e.g.*, *Cannon v.*

*Washington*, 418 F.3d 714, 719-720 (7th Cir. 2005); *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005); *Getty v. Santos*, Case No. 3:18-CV-1134-MAB, 2020 WL 2832465, at *4-6 (S.D. Ill. May 31, 2020). This exception does not allow a plaintiff to file an amended complaint to replead previously unexhausted claims and thereby circumvent the PLRA's exhaustion requirement. Rather, it allows a plaintiff to raise one or more new, properly exhausted claims against new defendants, if he has fully exhausted all available remedies before hailing the new defendants into court. *See Barnes*, 420 F.3d at 678. In this respect, an amended complaint serves as the functional equivalent of a new complaint, marking the point in time when exhaustion as to those new claims and/or new defendants must be complete. *Id.* at 678 (citation omitted). Under this exception, Plaintiff's deadline for exhausting his administrative remedies as to all new claims and defendants was September 3, 2024, the date he submitted the amended complaint.

## DISCUSSION

Defendants contend that none of the grievances submitted by Plaintiff properly exhaust any of the three claims asserted in the amended complaint. Plaintiff opposes the motion, maintaining that he did, in fact, exhaust his administrative remedies. The Court addresses each claim in turn, along with the corresponding exhaustion issues.

At the outset, the Court addresses Plaintiff's argument that Defendants' earlier withdrawal of their affirmative defense regarding exhaustion of administrative remedies bars them from seeking summary judgment. The Court disagrees. As previously

explained, when the Court granted in part and denied in part Plaintiff's motion for leave to amend, it directed Defendants to respond to the complaint and not to waive their right to file a reply under 42 U.S.C. § 1997e(g). (Doc. 63, p. 19). Accordingly, the Court finds Plaintiff's argument unpersuasive.

**Eighth Amendment Claim – Count 1**

As to the Eighth Amendment claims, Defendants maintain none of the grievances mention confinement by administrative policies; confinement that aggravated his mental health; confinement based on security or behavior, or contain any description of Defendants Gallway, Smith or Hinton.[4] Specifically, Defendants argue that Plaintiff's grievances only mention Covid lockdowns, yard cancellations, or general lack of exercise. The Court does not agree with Defendants and finds that grievances K19-0524-0815, 2022-8-286, 2022-08-62 and 2022-11-22 all serve to exhaust administrative remedies to this claim.

Grievance K19-0524-0815 complains about the yard being cancelled 50% of the time, references mental-health settlement requirements, and complains about out-of-cell time. This grievance squarely matches the contents of Plaintiff's claims in Count 1. Likewise, grievances 2022-8-286, 2022-08-62, and 2022-11-22 all complain about yard cancellations which relate to Plaintiff's conditions of confinement claims. While these

---

4 In the reply brief, Defendants concede that because they were sued in their official capacities, there was no need to name or describe Defendants Hughes, Hinton, or Smith in the grievances. (Doc. 87, p. 7).

grievances do not name Defendant Galloway, Defendant Galloway signed off on grievances 2022-8-286, 2022-11-222, and K19-0524-0815. Thus, Defendant Galloway was part of the grievance process and participated in denying his grievances. Thus, he may be liable for deliberate indifference as Plaintiff'[s] requests fell on "deaf ears". *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Further, Plaintiff is not required to file successive grievances raising the same issues if the conduct continues. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Defendants fails to cite to any case law requiring an inmate to file an additional grievance against the grievance officials who reviewed his grievance. As Defendant Galloway reviewed these grievances, Plaintiff did not need to file separate, additional grievances against him. Defendants Smith and Hinton are being sued for policy-based confinement issues related to the grievances and claims in this case.

These grievances repeatedly served to alert the prison to the nature of the wrong for which Plaintiff was seeking redress, *i.e.*, prolonged confinement with lack of yard time, lack of out-of-cell time, and mental health restrictions. The prison had notice, had the opportunity to investigate, and had the opportunity to correct the problem. Thus, the Court concludes that Plaintiff exhausted his administrative remedies against Defendants on this claim.

**First Amendment Retaliation claim, Count 3**

As to the First Amendment retaliation claim, Defendants argue that none of Plaintiff's grievances allege retaliation, none identify Defendant Galloway in any

manner, and none connect the yard closure to the filing of this lawsuit. Even viewing the record in the light most favorable to Plaintiff, the Court agrees. A review of the grievances shows that none assert that Defendant Galloway retaliated against Plaintiff, nor do they mention or link the yard closure to this action. Accordingly, Plaintiff failed to exhaust his administrative remedies against Defendant Galloway on Count 3. Defendant Galloway is entitled to summary judgment on this claim. Accordingly, the First Amendment Retaliation claim against Defendant Galloway is dismissed without prejudice for failure to exhaust administrative remedies.

**ADA/Rehabilitation Act claim**

Defendants argue that the ADA/Rehabilitation Act claim fails because none of Plaintiff's grievances assert that he was denied out-of-cell time due to a disability, none allege that he was removed from the mental-health caseload for discriminatory reasons, and none identify Defendant Hughes or describe disability-based mistreatment. The Court rejects these arguments.

The Court concludes that grievance K19-0524-0815 adequately notified the prison of a disability-related denial of out-of-cell time. In that grievance, Plaintiff reported that yard time had been canceled "close to 50%" of the time in April 2024 and specifically cited the "mental health settlement," which requires 10 hours of yard time and 20 hours of out-of-cell time for SMI inmates. Plaintiff further stated he was receiving fewer than 17 hours. This grievance therefore connects the lack of out-of-cell time to

mental-health-related obligations. Count 5 alleges that Plaintiff was removed from the mental-health caseload, denied out-of-cell time, and denied access to treatment because of his mental-health condition, amounting to discrimination. The grievance provided sufficient information for prison officials to understand and investigate the issue. Accordingly, the Court finds that Plaintiff exhausted his administrative remedies for this claim.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants (Doc. 84). The Court **DENIES** that motion as to Count 1, Eighth Amendment Conditions of Confinement claim and as to Count 5, the ADA/Rehabilitation claim. The Court **GRANTS** the motion as to Count 3, the First Amended Retaliation claim. The Court **DISMISSES without prejudice** Plaintiff's Count 3. Lastly, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same at the end of the case.

This matter will proceed on Count 1 and Count 5 of the Amended Complaint.

**IT IS SO ORDERED.**

**DATED: September 1, 2026.**

Gilbert C Sison

Digitally signed by Gilbert C Sison
Date: 2026.09.01 14:12:02 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**